STATE of Tennessee, Appellee,

v.

Joe Andre WILLIAMS, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 4, 1995.

Permission to Appeal Denied March 3, 1996.

Jeffrey A. Devasher, Senior Assistant Public Defender, John D. Wiethe, Assistant Public Defender, Nashville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Kimbra R. Spann, Assistant Attorney General, Nashville, Victor S. Johnson, District Attorney General, Roger Moore, Assistant District Attorney General, Nashville, for Appellee.

## *OPINION*

WELLES, Judge.

The Defendant, Joe Andre Williams appeals as of right from a Davidson County jury verdict convicting him of aggravated rape. The trial court sentenced him to twen-

ty-five years imprisonment as a Range I standard offender. The Defendant appeals his conviction and his sentence. We affirm the judgment of the trial court in part and reverse in part.

The Defendant argues four issues on appeal: (1) That the evidence in the record is not sufficient to support a finding that the Defendant is guilty of aggravated rape beyond a reasonable doubt; (2) that the trial court erred in allowing the testimony, under the hearsay exception found in Tennessee Rules of Evidence 803(4), of a nurse practitioner concerning a statement from the victim; (3) that the trial court erred in instructing the jury on alternative theories on which the Defendant could be convicted of aggravated rape; and (4) that the sentence imposed by the trial court was excessive, and the enhancement and mitigating factors were improperly applied.

The victim, a student from a Florida university, was visiting a friend, a student at Vanderbilt University, on homecoming weekend, October 24, 1992. Late that evening and early on the morning of October 25, 1992, the victim went to several parties at the fraternity houses on campus. The victim had arranged to meet her friend at the friend's car parked behind a dormitory at approximately 4:30 a.m. on Sunday, so that she could be taken to the airport to catch an early flight to Florida.

The victim testified that when she arrived at the car at the appointed time, her friend was not there. The victim left her luggage beside the car and began walking back to the front of the dorm when she was approached by a man she identified as the Defendant, who asked her for a ride. The victim testified that she told the Defendant that she did not have a car because she was just visiting from Florida. The Defendant then told her that he was deaf, but that he could read her lips. The victim said that the Defendant had a speech impediment like that of some deaf people. The Defendant said that he would move to Florida and that he would be her "girlfriend" [sic]. The victim testified that after this remark, she thought the Defendant might also be mentally handicapped.

The victim tried to phone her friend from a phone in front of the dormitory, but could not reach her. The victim testified that the Defendant remained nearby while she called her friend. After the victim hung up the phone, she decided to return to the car at the rear of the dormitory because she did not want to leave her luggage unattended. The victim testified that as she went around the corner, the Defendant, who was walking beside her, reached around, covered her mouth, and dragged her to a darker area near a dumpster.

She testified that the Defendant slammed her head against the pavement repeatedly, and she began screaming. The victim said that the Defendant began strangling her, and she could not breathe for quite some time. She testified that she then heard a voice that she did not think belonged to the Defendant tell her to roll over. She testified that she thought two other people were there. Someone then took off her underwear and briefly penetrated her vagina with his penis. After the attack, the victim ran to the nearby dorm and told the student at the front desk to call the police.

The police and ambulance arrived shortly thereafter. Paramedics took the victim to General Hospital. At the hospital, the nurse performed a rape kit, which consists of vaginal swabbings, pubic hair samples, and blood samples taken from the victim. The victim had extensive facial swelling, and her eyes were swollen shut. She had bruises on her arms, abrasions on her legs, and marks on her neck and chest. During the beating, the victim suffered a broken nose and a broken bone above her lip. She also suffered nerve damage to her eyebrow. An earring that the victim testified did not belong to her was found in her hair.

At the hospital, the victim described her assailant as a black male with short hair that acted deaf. She described him as wearing light blue jeans, a striped shirt, a baseball cap, and an earring.

I.

The Defendant first argues that the evidence is insufficient to support a jury verdict that he was guilty of rape beyond a reason-

able doubt. He specifically argues that the evidence at trial fails to establish his identity as the perpetrator, because although the victim identified the Defendant as the person who assaulted her immediately prior to the rape, she was unsure whether the Defendant was the person who actually raped her.

The Defendant testified through an interpreter that he has been deaf since he was a small child, and that although he is able to speak, his speech is "very bad." The Defendant contends that on the night of the incident, he and his best friend, Dewayne, ate dinner at a fast food restaurant then went to a sports bar. At the sports bar, he met three men, Kenny Burns, "Bryant," and "Jeffrey." The group then went to the fraternity houses on the Vanderbilt campus in Burns' car.

The Defendant said that they attended several fraternity parties on campus. At one party, someone approached the Defendant. The Defendant testified that the person spoke to him, but the Defendant could not understand what the person said. The Defendant testified that he was then hit in the face and fell on some steps injuring his knees and his right hand.

The Defendant testified that he and Bryant then went to another fraternity house, where they were questioned by Officer Watson. The Defendant testified that they had become separated during the evening from Kenny Burns, the owner of the car in which they arrived. After the encounter with Officer Watson and after unsuccessfully attempting to find Burns, they returned to the car and went to sleep.

At trial, a dark blue silky "Detroit Pistons" jacket was admitted into evidence as the jacket the Defendant was wearing. A black blue-jean jacket was found in the car in which the Defendant was sleeping. Several of the witnesses and the victim testified that the Defendant was wearing the silky jacket and jeans on the night of the rape.

The Defendant testified that he wore the black jeans jacket when he was at the fraternity parties. He testified that he found the Detroit Pistons jacket in Kenny Burns' car during the middle of the night, but he denied wearing that jacket to the parties. He denied wearing an earring that night and testified that the earring found in the victim's hair did not belong to him.

Several other individuals testified that they were assaulted by the Defendant earlier in the evening. Kim Itekoff, a Vanderbilt student, testified that she was outside a fraternity house with friends when she was grabbed on the buttocks. She turned around and saw three black men, including one who gave her an intimidating look. She could not identify the Defendant as the person who assaulted her, but she thought that the individual was dressed all in black.

Whitney King, a Vanderbilt student with Ms. Itekoff when the alleged incident occurred, identified the Defendant as the person at whom Ms. Itekoff pointed and said, "That guy just grabbed me." She identified a Detroit Pistons jacket as the one worn by the Defendant at the time and testified that he wore dark jeans and a dark shirt. She also testified that she identified the Defendant in a lineup that she subsequently viewed at police headquarters.

Mary Donna Wimberly, another Vanderbilt student, identified the Defendant as the person who grabbed her buttocks as she stood in the foyer of another fraternity house on campus. She testified that the Defendant was dressed in black, wore a cap, and was accompanied by two white males. She testified that she later saw the Defendant lick one of her friends on the neck. When the Defendant left the fraternity house, she saw him urinate on the front left wheel of her car. She subsequently identified the Defendant in a lineup at police headquarters.

Marcelle Robertson testified that she was in a fraternity house on the Vanderbilt campus when she felt two hands grab her buttocks. She turned around and saw the Defendant. She was grabbed again three or four minutes later. She testified that the jacket admitted as an exhibit was similar to the one worn by the Defendant. She also testified that the Defendant wore an earring. Ms. Robertson reported the incident to Vanderbilt security the next day and later identified the Defendant at a police lineup as the man who assaulted her.

Caleb Clark and Baxter Southern, members of the fraternity in whose house Ms. Robertson was assaulted, identified the Defendant as the person they ejected from the fraternity house after the incident. After the members asked him to leave, the Defendant and some of the members got into a brief scuffle, and then the Defendant left.

Officer Bob Watson, with the Vanderbilt University Police and Security Department, was called to check out a disturbance at a fraternity house on campus. He testified that upon his arrival, someone identified the Defendant as having caused the disturbance. At this point, Officer Watson saw the Defendant enter another fraternity house. The officer eventually saw and talked to the Defendant at one of the fraternity houses, and the officer noted that the Defendant was deaf. When he saw the Defendant, he was wearing a black shirt, orange shorts, brown shoes, and an earring. Two white males were with the Defendant. Officer Watson told all of the individuals to leave the campus. The officer testified that he did not notice any scrapes or injuries on the Defendant at fraternity row.

Officer Watson testified that later that morning he received information concerning the rape of the victim, along with a description of a suspect. Upon hearing the description, he began looking for the Defendant. He subsequently found the Defendant sleeping in a car with the two men who were with him earlier. The car was parked in a lot adjacent to the one of the dorms. After calling for assistance, Officer Watson ordered the men out of the car. The Defendant was wearing the same orange shorts and brown shoes he had been wearing earlier, but had changed into a purple shirt and a ball cap, and was no longer wearing an earring.

The Defendant denied any involvement in the offenses with which he was charged. The Defendant was indicted for two counts of aggravated rape and four counts of sexual battery by the Davidson County Grand Jury. The prosecution dismissed one count of aggravated rape, and one count of sexual battery was nolled. The jury found the Defendant guilty of aggravated rape and not guilty of the remaining charges.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (Tenn.1956). This court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod,* 754 S.W.2d 627, 632 (Tenn. Crim.App.1988).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas,* 754 S.W.2d 620, 623 (Tenn.Crim. App.1987). In *State v. Grace,* 493 S.W.2d 474 (Tenn.1973), the Tennessee Supreme Court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *Id.* at 476.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *id.,* the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and

the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *Matthews*, 805 S.W.2d at 780.

■ The Defendant was convicted under Tennessee Code Annotated section 39–13–502 which defines aggravated rape as "the unlawful penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: . . . (2) The Defendant causes bodily injury to the victim. . . ."

The victim positively identified the Defendant as her assailant and also said that she was certain the Defendant was present when the rape occurred. On the night of the rape, the victim described her assailant as being deaf, and the Defendant was indeed deaf. At the hospital, the victim also described her attacker as a black male wearing a dark jacket, a cap, and an earring. Although at trial the victim could not remember exactly what clothing the Defendant was wearing, she positively identified the dark silky jacket as the one the Defendant was wearing at the time of the rape.

Officer Sam Branch, a lieutenant with the Police and Security Department at Vanderbilt, saw the victim at the dorm before she was taken to the hospital. He identified the earring entered into evidence as the earring he saw in the victim's hair immediately after the rape. The victim testified that the earring did not belong to her. Officer Watson identified the earring as being similar to the earring he had seen the Defendant wearing at the fraternity house. He identified the jacket in evidence as the one worn by the Defendant when he found the Defendant in the car.

Officer Watson testified that the Defendant had apparently changed shirts between the time the officer told him to leave campus and the arrest. Officer Watson further testified that he did not see any injuries on the Defendant when he was ejected from campus. The photographs taken of the Defendant shortly after his arrest depict scrapes on his knees, elbows, and hands.

Officer Wayne Hughes, a police officer for the city of Nashville, testified that he found a ladies watch and a piece of white cloth at the crime scene. He testified that he collected a stray piece of light colored hair from the Defendant's head.

Deane Johnson, a forensic serologist employed by the Tennessee Bureau of Investigation testified that he analyzed the rape kit evidence taken from the victim and from the Defendant. He testified the blood and vaginal swabbings from the rape kit were inconclusive. Tests that compared the hair found on the Defendant's head with a strand of Ms. Harrington's hair were also inconclusive. He testified that although he found small amounts of blood on the jacket sleeve and shorts taken from the Defendant, he was unable to determine the type or source of the blood. The blood samples of the Defendant and the victim, along with the vaginal swabbings taken from the victim were sent to the Federal Bureau of Investigation laboratory for DNA testing. Those results were also inconclusive.

Despite the inconclusive results of the rape kit and the DNA tests, the victim made a positive identification of the Defendant as the person who assaulted her and who was present when the rape occurred. The Defendant was present on the Vanderbilt campus both before and after the rape occurred and was found in close proximity to the location of the rape. Although there is some discrepancy in the witnesses' descriptions of what the Defendant was wearing on the night of the rape, it is within the jury's province to determine the credibility of the witnesses and to resolve the factual issues raised by the evidence. *Pappas*, 754 S.W.2d at 623.

Even though the evidence does not clearly identify the Defendant as the person who actually penetrated the victim, the evidence does establish that the Defendant was present and aggressively participated in the rape. The victim testified that the Defendant was indeed the person that violently assaulted her. The trial court instructed the jury on the criminal responsibility statute found at Tennessee Code Annotated section 39–11–402. Under the criminal responsibility statute, a person is criminally responsible for an

offense committed by the conduct of another if:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense; [or]

(2) Acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense....

Tenn.Code Ann. § 39–11–402. The Defendant cannot escape culpability for his part in this criminal act of rape simply because the victim cannot say with complete certainty that he is the person who actually penetrated her. To hold otherwise would, in effect, produce an illogical result. The victim identified the Defendant as the one who initiated the attack. If the Defendant was not the person who penetrated the victim, he clearly assisted the one who did.

When viewing the evidence in the light most favorable to the State, we conclude that the Defendant has not carried his burden of illustrating that the evidence is insufficient to support the jury's verdict. We, therefore, conclude that the evidence is sufficient to uphold the verdict of guilt beyond a reasonable doubt.

## II.

The Defendant next contends that the trial court erred in allowing the testimony of the nurse that interviewed and examined the victim at General Hospital shortly after the victim was raped. The testimony was allowed under the "diagnosis and treatment" exception to the hearsay rule found in Tennessee Rule of Evidence 803(4). During the trial, the court held a jury-out hearing to determine the admissibility of the testimony of Terri Erwin, the nurse practitioner who interviewed the victim in the emergency room after the rape.

The information had been recorded on a standard form used when victims of sexual assaults are brought to the hospital. Ms. Erwin testified that the information on the form was recorded for the purpose of diagnosis and treatment. However, she also acknowledged that because the statement was the victim's version of the events, some of the entries, such as the geographic location of the assault, were not relevant for the purposes of diagnosis and treatment of the victim.

The report, which Ms. Erwin testified was written using the victim's words, is as follows:

Just left a friend's dorm. Walked out in the parking lot to put things in the car. A black man wearing a hat and jeans approached me. He told me he was deaf. Asked me for a ride. Went back to the dorm to get bags. This man went with me. As I walked out of the dorm again, several black men jumped on me and bashed my head against the pavement. Had my face down so I could hardly breathe so I couldn't scream. One of them turned me over, ripped my clothes and quickly had sex with me. I was screaming. They all left me. I went back to the dorm. A man there called the police for me. He tried to choke me with his hands before he raped me.

The trial court ruled that the entire contents of Ms. Erwin's report would be admissible. The court reasoned that information such as where the incident happened or when it happened could be highly relevant in giving the doctor the information to decide what treating procedures might be appropriate or inappropriate.

The Defendant specifically contends that the history given to the nurse practitioner by the victim was not admissible under the "diagnosis and treatment" exception to the hearsay rule, because the rule does not apply to statements taken by nurse practitioners. Alternatively, the Defendant argues that even if statements given to a nurse practitioner are admissible under the exception, the trial court erred in admitting the entire contents of the report and should have redacted that part of the statement not necessary for diagnosis and treatment.

Tennessee Rule of Evidence 803(4) provides that statements made for the purpose of medical diagnosis and treatment are

not excluded by the hearsay rule. The rule says that "[s]tatements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment." Tenn.R.Evid. 803(4). However, some statements that the declarant intends to be used for diagnosis and treatment, such as statements about the cause of the symptoms, are not always admissible. Admissibility of these statements hinges on whether they are reasonably pertinent to diagnosis and treatment. Neil Cohen et al., *Tennessee Law of Evidence* § 803(4).3. (1990 & Supp.1993).

Although Rule 803(4) generally includes statements made to physicians, the exception encompasses statements made to anyone, such as medical professionals, nurses, or any other health care attendants, *provided* the statement is made for the purposes of medical diagnosis and treatment. Cohen et al., *supra*, at § 803(4).6. The Defendant contends that the Tennessee Supreme Court in *State v. Barone*, 852 S.W.2d 216 (Tenn. 1993), implicitly held that only treating physicians can testify to hearsay statements elicited for purposes of diagnosis and treatment. Thus, the victim's statements to the nurse practitioner are inadmissible because she is not a treating physician.

In *Barone*, the supreme court held that statements about a crime made to a psychologist by a three-year-old child, allegedly the victim of a rape by her father, were not admissible under the Rule 803(4) exception because the psychologist was not a physician. Although the court found that the statements were made for the purpose of diagnosis and treatment, it found a distinction between statements made to a physician for the diagnosis and treatment of a *medical* problem and statements made to a psychologist for the treatment of a psychological or mental problem, in which case the declarant might not feel the necessity to speak as truthfully.

We believe that *Barone* distinguishes between statements made for the purpose of the diagnosis and treatment of medical problems as opposed to the statements made for

the diagnosis and treatment of psychological or mental problems. Thus, we conclude that the former type of statements are still admissible under the Rule 803(4) exception, even when the statements are made to someone other than a physician, provided that such statements are for the purpose of diagnosis and treatment of a medical or physical problem. Accordingly, the statements made by the victim to the nurse practitioner that were reasonably pertinent for medical diagnosis and treatment were admissible.

The Defendant next argues that the nurse practitioner's testimony regarding statements made to her by the victim should have been limited to only those statements necessary for diagnosis and treatment. The trial court ruled that the entire history given by the victim to the nurse was admissible under Rule 803(4), even those portions not relevant to diagnosis and treatment, because the nurse took the history for the purpose of diagnosis and treatment. We disagree.

Traditionally, extraneous facts such as the name or identity of the perpetrator of a crime have not been deemed "reasonably pertinent" to medical diagnosis and treatment. In *State v. Rucker*, 847 S.W.2d 512 (Tenn.Crim.App.1992), the trial court had admitted most of the statements given by a child rape victim's mother to the emergency room nurse, which included a statement that the child's father was the rapist.

Despite the previous interpretation of the rule, this court held that in child abuse cases, statements identifying the perpetrator as a member of the child's household are admissible under Rule 803(4) because they can be reasonably pertinent to medical diagnosis and treatment. *Id.* at 520. However, just because statements are recorded as part of the medical history does not mean that the entire history is admissible. *Id.* Thus, any statements in the patient's history not pertinent to medical diagnosis and treatment should have been redacted. *Id.*

In accordance with the *Rucker* holding, we conclude that the trial court erred in admitting the entire contents of the patient's history. The statements regarding the events before the rape and the descrip-

tion of the assailant should have been redacted. However, because the witness made a positive identification of the Defendant at trial and in light of the other evidence in the record describing the events of the rape and identifying the Defendant as the perpetrator, we find the admission of these statements to be harmless error. This issue has no merit.

### III.

The Defendant next contends that the trial judge erred in instructing the jury on the Defendant's criminal responsibility for the conduct of another, thus depriving the Defendant of his right to a unanimous jury verdict under Article 1, § 6 of the Tennessee Constitution. The Defendant further argues that this error was so prejudicial as to warrant a new trial.

The trial judge instructed the jury on the elements of aggravated rape and on the alternative theory of criminal responsibility for the conduct of another. *See* Tenn.Code Ann. § 39–11–402. The instructions on the criminal responsibility for aggravated rape were as follows:

(1) that another person had unlawful sexual penetration of ... the alleged victim; and

(2) that that other person caused bodily injury to the alleged victim; and

(3) that that other person acted either intentionally, knowingly or recklessly; and that the defendant is criminally responsible for that conduct on the part of that other person. The concept of criminal responsibility has been previously been explained to you.

The defense counsel objected to this instruction, and the trial court overruled the objection. The Defendant did not, however, clearly raise this issue in his Motion for New Trial. The only reference the Defendant made to the jury charge in the new trial motion was, "During the charge to the jury there was a standard reference 'to another', which had a prejudicial effect." We are unable to determine whether this statement in the motion is referring to his objection to the court's instructions on criminal responsibility. Failure to raise this objection with clarity or

specificity in his new trial motion generally means that this issue has been waived. T.R.A.P. 3(e); *see State v. Clinton*, 754 S.W.2d 100, 103 (Tenn.Crim.App.1988). Notwithstanding the technical waiver of this issue, we will briefly address the merits of the Defendant's claim.

The Defendant asserts that because of the alternative theory of criminal responsibility given in the jury instruction, the form of the jury's verdict does not indicate whether it found the Defendant to be the actual perpetrator of the offense, whether it found the Defendant guilty based upon his criminal responsibility for the conduct of another, or whether the individual jurors were divided on the theory of the Defendant's liability. Thus, the Defendant claims that the trial court's instructions violate his right to a unanimous jury verdict.

The Defendant correctly cites *State v. Brown*, 762 S.W.2d 135, 137 (Tenn. 1988), for the proposition that an accused's constitutional right to a jury necessarily entails a right that the jury be unanimous as to which offense constitutes the crime for which the defendant is convicted. Moreover, this constitutional right also means that a defendant is entitled to a unanimous verdict regarding the specific acts which constitute the offense. *State v. Brown*, 823 S.W.2d 576, 583 (Tenn.Crim.App.1991).

The court in *Brown* held that in cases involving evidence which potentially could lead to a conviction from different jurors concluding that the defendant committed different acts, each of which separately showed the commission of the offense, "the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts." *Id.* at 583.

The case *sub judice* is easily distinguishable from *Brown* and the other cases that the Defendant cites. Unlike the cited authority, this case involves one particular offense occurring during one criminal event. Problems with a unanimous jury verdict generally arise when the State fails to elect among different offenses. Here, the State properly elected to seek a conviction of ag-

gravated rape by serious bodily injury. The trial judge instructed the jury on the elements of this offense, and found the evidence to warrant a further instruction on criminal responsibility for another, and for criminal responsibility relative to the elements of aggravated rape. The jury reached a verdict based on one set of facts relating to the one incident of rape. We conclude that the Defendant's constitutional right to a unanimous jury verdict was not violated by the court's instructions. This issue has no merit.

### IV.

The Defendant next argues that the trial court erred in sentencing him. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40–35–102, –103, and –210; *see State v. Smith,* 735 S.W.2d 859, 863 (Tenn. Crim.App.1987).

The sentence to be imposed by the trial court is presumptively the minimum sentence in the range. Tenn.Code Ann. § 40–35–210(c). Procedurally, the trial court is to increase the sentence within the range based upon the enhancement factors, then reduce the sentence as required by the mitigating factors. Tenn.Code Ann. § 40–35–210(d), (e). The weight given to any existing factor is within the trial court's discretion, so long as it complies with the purposes and principles of sentencing and the court's findings are adequately supported by the record.

The presentence report reflects that the Defendant has no prior criminal record. He apparently graduated from high school and attended college for a short period of time, but this information was not verified by the investigating officer. The Defendant said that at the time of the offense, he was employed by a grocery store, however, the personnel director at the store reported that the Defendant was never employed at that establishment. The Defendant reported that deafness was a disability, and he apparently had no drug or alcohol abuse problems.

The Defendant contends that the trial court erroneously applied the following enhancement factors to increase his sentence:

(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn.Code Ann. § 40–35–114.

The trial court apparently combined the first three factors listed above in determining the weight which they would carry to enhance the offense. The Defendant first contends that the application of factor five, that the defendant "treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense," was error. We agree.

Although the Defendant undoubtedly acted with cruelty in beating and participating in the rape of the victim, this en-

hancement factor requires a showing of "exceptional" cruelty. Exceptional cruelty is usually found in cases of abuse or torture. *See State v. Davis,* 825 S.W.2d 109, 113 (Tenn.1991); *State v. Haynes,* 720 S.W.2d 76, 86 (Tenn.Crim.App.1986). In *Manning v. State,* 883 S.W.2d 635, 639 (Tenn.Crim.App.1994), this court found the exceptional cruelty factor was not applicable in a case in which the Defendant abducted the victim and forced her to participate in four sexual acts while holding a knife to her person, using abusive language toward her, and making threats to harm her. This court found the exceptional cruelty factor did not apply in a case in which the defendant entered the victim's apartment, pushed her into the bathtub, and hit her in the mouth causing injuries. *State v. David Patrick Pearson,* No. 03C01–9103–CR–87, Knox County, slip op. at 3, 1992 WL 70547 (Tenn.Crim.App., Knoxville, filed Apr. 9, 1992).

In the case *sub judice,* the facts applicable to this factor are the same facts that elevated the offense to aggravated rape under the law. Although the victim suffered painful injuries during the offense, these injuries are included in the statutory definition of bodily injury that constitutes aggravated rape. This case involved no extended length of torture, no weapons, nor any unusual type of abuse. Beyond the obvious cruelty inherent in every rape involving bodily injury, we find no evidence in the record to support a finding of exceptional cruelty. Thus, we conclude that the trial court erroneously applied this factor.

The Defendant contends that the trial court erred in finding that "the personal injuries inflicted upon the victim were particularly great." Tenn.Code Ann. § 40–35–114(6). The Defendant was convicted for the offense of aggravated rape by causing "bodily injury" to the victim. Tenn.Code Ann. § 39–13–502(a)(2). He contends that the evidence at trial which was used to establish that the victim suffered "bodily injury" sufficient to elevate the offense to aggravated

rape is the same evidence relied upon by the trial court to enhance his sentence under factor (6).[1]

■ It is well established that "essential elements of the offense as charged in the indictment" cannot be used to enhance a defendant's sentence. Tenn.Code Ann. § 40–35–114. However, unlike the analysis of enhancement factor (5), this court has held that the term "personal injuries" as found in enhancement factor (6) was intended by the legislature to include injuries not presently embraced in the statutory definition of "bodily injury" as found in the aggravated rape statute. *State v. Smith,* 891 S.W.2d 922, 930 (Tenn.Crim.App.1994). This court has construed the legislative intent in the term "personal injuries" as broad enough to include not only physical harm, but also severe emotional injuries and psychological scarring. *Id.*

■ This court has also previously found this enhancement factor applicable in rape cases in which the victims suffered depression, anxiety, and other emotional problems in addition to their physical injuries. *Id.; Pearson,* slip op. at 12–13, 1992 WL 70547. Thus, if a victim suffers these other types of personal injuries, such as psychological or emotional injuries, and the record indicates that these injuries were "particularly great," factor (6) may be applicable. The victim in this case suffered more than just physical injuries, however, the record must indicate that her psychological injuries were particularly great before factor (6) can be applied.

■ The presentence report reflects that in addition to the painful physical injuries the victim suffered during the attack by three assailants, the rape has adversely affected her emotional well-being. Her statement to the court in the report indicates that after the rape, she experienced periods of depression and suffered from low self-esteem. She was often unable to work. Her ability to maintain personal relationships has been impaired. She missed five weeks of college, her schoolwork suffered, and her scholar-

---

1. "Bodily injury" is defined as a "cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn.Code Ann. § 39–11–106.

ships were jeopardized. The victim sought weekly counseling for a period of time. Additionally, the trial court noted that the "vicious physical battering" of the victim went beyond what was necessary to subdue the victim.

We conclude that the victim suffered personal injuries beyond those statutorily defined as "bodily injury." Because the record reflects that these injuries to the victim were particularly great, we agree with the trial court that factor (6) could be used to enhance the Defendant's sentence.

The Defendant next contends that the trial court erred in finding that the offense was committed in order to gratify the Defendant's desire for pleasure or excitement. Tenn.Code Ann. § 40-34-114(7). The court concluded that the physical abuse of the victim was more than necessary to accomplish the rape and that the feeling of power deriving from the beating had to be for the Defendant's gratification or desire for excitement.

■ The Tennessee Supreme Court in *State v. Adams*, 864 S.W.2d 31, 34 (Tenn. 1993), rejected the view that every rape is implicitly performed for the purpose of pleasure or excitement. The court noted that some crimes are committed out of brutality, revenge, or hatred. *Id.* Thus, because pleasure or excitement is not an essential element of the offense of rape, factor (7) may be considered as an appropriate enhancement factor. *Id.* However, the Supreme Court noted that the "State has the burden of proving that the rape was sexually motivated." *Id.*

■ The Defendant submits that the State has not proven that this crime was sexually motivated rather than an act of violence against the victim. We agree. The record bears no evidence that the Defendant made any abusive or sexually explicit comments during the assault or the commission of the rape. The only type of sexual comments made to the victim as evidenced in the record, is that the Defendant told the victim that he would be her "girlfriend" [sic]. Factor (7) has been usually been applied when more overt sexual displays were made, such as when a defendant fondled, kissed, or be-

haved in a sexual manner, or when the perpetrator acted while making sexually explicit remarks. *See Manning v. State*, 883 S.W.2d 635, 639 (Tenn.Crim.App.1994).

The State argues that factor (7) is applicable because no other explanation for the severe beating of the victim exists other than the gratification of the Defendant. We conclude that the State has not met its burden in showing that the rape was committed in order to gratify the Defendant's desire for pleasure or excitement. Thus, factor (7) was improperly applied.

■ The court next determined that the Defendant had no hesitation about committing the rape when the risk to human life was high. Tenn.Code Ann. § 40-35-114(10). In *Manning*, 883 S.W.2d at 640, the court allowed the use of factor (10) to enhance the sentence because the defendant had kept a knife pressed to the neck of a victim during the commission of the offense. The court found that "use of a weapon in this case involves a greater risk of harm than required by standards of aggravated offenses." *Id.* However, this factor was not found applicable in a case in which a defendant hit a victim in the face with his fist three times, ripped her clothes, and penetrated her. *State v. Gaskell*, No. 285, Bradley County, 1991 WL 112275 (Tenn.Crim.App., Knoxville, filed June 26, 1991). Factors (10) and (16) have been found applicable when the evidence shows harmful or physically threatened conduct which is "clearly beyond what is necessary to prove the underlying offense." *State v. Richard J. Crossman*, No. 01C01-9311-CR-00394, Wilson County, slip op. at 16, 1994 WL 548712 (Tenn.Crim.App., Nashville, filed Oct. 6, 1994), *perm. to appeal denied*, (Tenn. Jan. 3, 1995).

The Defendant used no weapons in the commission of this offense. Nor does the record reflect that the Defendant's actions showed conduct that is clearly beyond that necessary to prove the underlying offense. Although we do not intend to minimize the severity of the victim's injuries, the cuts, abrasions and bruises the victim suffered are elements of aggravated rape by bodily injury. Thus, we conclude that in the case *sub judi-*

*ce,* factor (10) should not have been applied to enhance the sentence.

Finally, the Defendant contends that enhancement factor (16), that the crime was "committed under circumstances under which the potential for bodily injury to a victim was great," is an element of the offense of aggravated rape by bodily injury, thus was erroneously applied to enhance the sentence.

In *State v. Smith,* 891 S.W.2d 922, 930 (Tenn.Crim.App.), *cert. denied, id.* (Tenn. 1994), this court reasoned that the Tennessee General Assembly had statutorily enhanced the punishment of aggravated burglary and aggravated rape and, therefore, had "recognized that the potential for bodily injury to the victim is great when these crimes are committed." Thus, a trial court should not apply enhancement factor (16) "absent extraordinary circumstances." *Id.* The record does not support the finding of extraordinary circumstances in this case, and we accordingly conclude that application of this factor was error.

Although the trial court found no applicable mitigating factors, the Defendant urges on appeal that his lack of a prior criminal record be considered as a mitigating factor. The presentence report indicates that the Defendant has no prior criminal record except for one charge of destruction of property that was later dismissed. Although absence of a prior criminal record may be considered under the catch-all provision of Tennessee Code Annotated section 40–35–113(13), *State v. Hicks,* 868 S.W.2d 729, 732 (Tenn.Crim.App.1993), this court is not required to consider this as a mitigating factor, *State v. Sandra Derrick,* No. 181, McMinn County, slip op. at 11, 1990 WL 192698 (Tenn.Crim.App., Knoxville, filed Dec. 6, 1990). Moreover, the Defendant's other conduct on the night of the incident was criminal in nature. Several college students testified that he assaulted them, although he was not convicted of those offenses. He was involved in an altercation at a fraternity house and was subsequently ejected from campus by the university police. He remained on campus anyway and later attacked the victim. Even if the Defendant were enti-

tled to this mitigating factor, its significance is negligible. *See State v. Raines,* 882 S.W.2d 376, 385 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1994).

Aggravated rape carries a sentence of fifteen to twenty-five years for a Range I standard offender. The Defendant was sentenced to serve a term of twenty-five years in the Department of Correction. Because of the improper application of four of the enhancement factors, we modify the sentence to eighteen (18) years.

The judgment of the trial court convicting the Defendant of aggravated rape is affirmed. The sentence is modified to eighteen (18) years. This case is remanded solely for entry of a new sentencing order.

WADE and PEAY, JJ., concur.