# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1997

FILED

June 26, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9605-CC-00227** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **HUMPHREYS COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ROBERT E. BURCH** |
| **JAMES R. LEMACKS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (DUI) |

## ON APPEAL FROM THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS COUNTY

FOR THE APPELLANT:

J.P. BRADLEY
110 West Main Street
Waverly, TN 37185

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

DAN ALSOBROOKS
District Attorney General

GEORGE SEXTON
Assistant District Attorney General
Humphreys County Courthouse
Room 206
Waverly, TN 37185

OPINION FILED _____

REVERSED AND REMANDED

DAVID H. WELLES, JUDGE

# <u>OPINION</u>

The Defendant appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Humphreys County jury of driving while intoxicated and sentenced to 11 months and 29 days, suspended except for 30 days with the remainder to be served on probation. His driver's license was suspended for one year and he was ordered to attend DUI school. He appeals his conviction raising two issues for review: (1) That the trial court erred in charging criminal responsibility when the Defendant was not formally indicted on this charge; and (2) that the trial court erred in charging criminal responsibility when the other party involved was never charged with any offense. Although not precisely on either of the issues raised, we reverse and remand for a new trial.

The Defendant and three other individuals, Sanchez, Duncan, and Lucas planned to attend a party on October 30, 1993. The four were soldiers at Ft. Campbell Army Post near Clarksville, Tennessee and they drove to Waverly, Tennessee for the party. The Defendant drove the others in his vehicle, a tan Ford Bronco. The party was being held at Rosie Matthews' (a.k.a. Rose Bramlett's) house, who was Sanchez' girlfriend. The four went to the party and to Pippin's, a bar in Waverly. They returned to the house in the early morning hours of October 31 to continue the party. All of them had been drinking beer that night, although Lucas testified that she stopped drinking before the others because the Defendant began acting strangely and she did not know him very

well. After they returned to the house, Sanchez and his girlfriend had a fight and he wanted to leave the party.

It is at this point in the evening when the testimony of the witnesses at the trial conflicts regarding who was driving the Bronco. The State presented the following evidence. The four left the party and proceeded down Clydeton Road. It is undisputed that Duncan was in the left rear passenger seat and that Lucas was in the right rear passenger seat. Less than a mile from the house, the vehicle left the roadway on the right side and traveled 285 feet in a ditch before it came to rest at an embankment. Lucas testified at trial that the Defendant was driving the Bronco. She stated that she offered to drive because she was relatively sober, but that the Defendant refused. She testified that the Defendant started in reverse with the emergency brake still on, but then took the brake off and proceeded down the road. Soon thereafter, the vehicle left the roadway. Lucas testified that, after the wreck, Sanchez opened the driver's side door from the outside and unlocked the Defendant's seatbelt. The Defendant fell diagonally into the passenger seat because the vehicle was at an angle. Lucas heard two thumps and it appeared that the Defendant's head was cut and bleeding. Sanchez explained that the Defendant hit his head on the windshield and the dashboard after his seatbelt was removed. Another vehicle pulled up and Sanchez got a ride back to the house to get help.

Tennessee State Trooper Mike Smothers was dispatched to the accident scene, along with an ambulance. Sanchez had a bump on the head and Lucas had a back injury and had to be extracted from the vehicle. The Defendant was being treated in the back of the ambulance when Trooper Smothers interviewed

him. He testified that the Defendant was initially uncooperative and would not answer his questions. He appeared intoxicated and was arguing with the EMT personnel. Lucas had stated that the Defendant was driving and the trooper confronted him. Trooper Smothers asked whether he was driving, and the Defendant admitted that he was driving and that he just missed the curve and ran off the road. The Defendant was taken to a hospital and consented to a blood alcohol test, resulting in a .20% blood alcohol level.

Trooper Smothers testified regarding the head injuries received by the Defendant and Sanchez as they corresponded to the crack in the vehicle's passenger side windshield. He stated that Sanchez could have hit the windshield without receiving cuts because of the safety glass. He also testified that the Defendant's cuts on the right side of his head could possibly be attributed to hitting the windshield if his head was turned to the left, but were not consistent with a passenger facing forward because the cuts would be on the front of the head.

The Defendant called Jennifer Barker, a woman who was also at the party, to testify that she saw Sanchez, not the Defendant, get into the driver's seat of the Bronco and drive away. She stated that everyone had been drinking and that Sanchez "was very intoxicated." Sanchez had a problem backing up and "spun gravel" when he pulled onto the road. She testified that he returned shortly, "saying that he'd had a wreck and that he thought he'd killed one of them." However, Barker also said that Sanchez told her that the Defendant was driving and that it threw him (Sanchez) out the passenger side window and threw the Defendant into the passenger seat.

-4-

The Defendant testified that Sanchez was driving the vehicle prior to the accident. After the wreck, he saw Sanchez at the driver's side window saying "we got in a wreck" and that he would get help. The Defendant testified that he felt blood on his head and passed out again on the dashboard. He was pulled out of the truck through the driver's side because the passenger door was obstructed by the embankment. He stated that Sanchez was drinking but that he couldn't answer whether Sanchez was intoxicated and how much he'd had to drink.

The Defendant was indicted in Humphreys County for vehicular assault and driving while intoxicated. Sanchez was not prosecuted for any crime. The jury found the Defendant guilty of driving while intoxicated.[1]

In his first issue, the Defendant argues that the court erred by charging the jury with criminal responsibility because it was not formally charged in the indictment. After the conclusion of the proof in this case, the State requested that the jury be charged on criminal responsibility[2] based on the proof at trial suggesting that Sanchez may have been the driver of the vehicle.

An indictment or presentment must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App.1982). The indictment "must state the facts in

---

[1] Tenn. Code Ann. § 55-10-401.

[2] Tenn. Code Ann. § 39-11-402(2),(3).

ordinary and concise language in a manner that would enable a person of common understanding to know what is intended, and with a degree of certainty which would enable the court upon conviction, to pronounce the proper judgment." Warden v. State, 214 Tenn. 391, 381 S.W.2d 244, 245 (1964).

The indictment in the case at bar charged the Defendant with driving while intoxicated, requiring that the following elements be proved: (1) That the Defendant was driving or in control of a motor vehicle; (2) that the vehicle was driven on a public road; and (3) that the Defendant was under the influence of an intoxicant. Initially, we note that criminal responsibility for the conduct of another is not a statutory offense, but rather a legal theory of criminal liability by which a defendant may be convicted for an offense when there are multiple actors involved. See Tenn. Code Ann. § 39-11-402.

The State decided that criminal responsibility was raised by the proof as a theory of liability based on the Defendant's position that he was not the driver of the vehicle and the State requested that an instruction be given to that effect. We do not believe that criminal responsibility must have been included in the indictment. The indictment gave the Defendant notice of the offense charged and an adequate basis for the entry of a proper judgment, and also provided protection against double jeopardy. The Defendant was only charged with and at risk of being convicted for DUI.[3] He was apprised of the elements of the crime against which he was to defend and for which the trial court entered a judgment. Although we do not know upon what theory the jury based its verdict, the

---

[3] We note that the Defendant was also charged with vehicular assault and was acquitted of that offense.

-6-

Defendant cannot be charged with another DUI offense based on that same incident. Thus, he is not at risk for double jeopardy.

We do not believe that our law requires criminal responsibility for the conduct of another to be charged in the indictment. In this case, the State had no notice of the defense that Sanchez may have been the driver. Because the evidence at trial raised the issue, it was not improper to request the charge at the conclusion of the proof.

In his second issue, the Defendant contends that the trial court erred by charging the jury on criminal responsibility when the other person was never charged with the offense and no proof was presented at trial regarding his degree of intoxication. We first note that the fact that a party to an offense has not been charged or convicted is not a defense. However, we conclude that charging criminal responsibility for the conduct of another led to error in the case <u>sub judice</u> for another related reason.

One is criminally responsible as a party to an offense "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401. Furthermore, the legislature has provided that a defendant may be criminally responsible based on the conduct of another "on proof of commission of the offense" and that the defendant was a party. Tenn. Code Ann. § 39-11-407. It is not a defense that "[t]he person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune

-7-

from prosecution." Tenn. Code Ann. § 39-11-407(2). The Sentencing Commission Comments to section 407 state the following policy determination for offenses based on criminal responsibility for the conduct of another:

This section reflects a policy determination that, in a case involving multiple offenders, a conviction should be sustained where there is sufficient evidence to support it, regardless of whether there is a failure of proof in another case involving other people. Thus, the defendant may be convicted whether the other parties to the offense are convicted, acquitted, or incapable of criminal responsibility.

Thus, upon proof that an offense has been committed, with multiple actors, even if another person was the principal, a defendant may be convicted for the conduct of the other based on one of three theories:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Tenn. Code Ann. § 39-11-402; see also State v. Williams, 920 S.W.2d 247, 257-58 (Tenn. Crim. App. 1995); State v. Gennoe, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992); State v. Brown, 756 S.W.2d 700, 703 (Tenn. Crim. App. 1988).

Here, the jury was charged with the latter two theories. The trial court also charged the jury that: "The facts presented in this case allow the jury to find either that (1) the defendant was the driver or (2) that the defendant was not the driver." The jury convicted the Defendant of DUI and rendered a general verdict. We do not know upon which theory and upon whose actions as principal the jury relied.[4]

The jury was given the choice of convicting the Defendant based on his own conduct or criminal responsibility for Sanchez' conduct. Ordinarily, the fact that the other actor was neither charged nor convicted of the crime is not a defense, and we agree that this charge was not error in the case sub judice. However, the State could only properly convict the Defendant "on proof of commission of the offense." Tenn. Code Ann. § 39-11-407. This case is unlike a conviction where an offense has been proved to have been committed with multiple actors where the identity of the actual perpetrator is unclear. See State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). In Williams, the victim was raped by one man when two others were present and participating and the victim could not identify the actual perpetrator. There, the jury was properly charged with criminal responsibility. Id. at 251, 257.

Here, in order to convict the Defendant, it was *possible* for the State to prove that either the Defendant or Sanchez was driving. The court could then charge the jury with DUI and criminal responsibility and convict the Defendant for

---

[4]We note that the Defendant has included in his brief what is ostensibly intended to be an affidavit from the jury foreperson describing their deliberations and what theory they used to convict. The Defendant claims that the trial court admitted the affidavit at the motion for new trial. First, we have found nothing in the technical record documenting the hearing on the motion for new trial nor the affidavit. Second, admitting documentation of a jury's deliberations is inadmissible unless under specific circumstances pursuant to Rule 606(b) of the Tennessee Rules of Evidence. Therefore, we do not consider this affidavit.

driving drunk himself or for allowing Sanchez to drive drunk. See Williams v. State, 352 S.W.2d 230, 209 Tenn. 208 (1961). However, it would have been *necessary* to prove that both the Defendant and Sanchez were intoxicated in order to establish that an offense had indeed been committed for the purpose of convicting the Defendant based on alternate theories of responsibility. The State argues that there was sufficient evidence to support a finding that Sanchez was driving and that he was intoxicated. The State contends that "[a]ll of the witnesses, including the defendant himself admitted that Mr. Sanchez was drunk."

We disagree. To determine the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). After a careful review of the record, we have found little evidence to support a finding beyond a reasonable doubt that Sanchez was intoxicated. There is only one statement from one witness, Jennifer Barker, that Sanchez was "very intoxicated." Other than that, the witness' statements were that generally everyone was drinking. The Defendant stated that Sanchez was drinking, but would not confirm how much he had to drink or whether he was intoxicated. There is no testimony regarding Sanchez' appearance or behavior, no field sobriety tests were conducted and no blood alcohol level was taken. Therefore, we are compelled to conclude that the evidence was insufficient to support a conviction based on Sanchez' driving while intoxicated. More proof of intoxication than that which was offered in the case at bar is necessary to uphold a conviction for DUI. See Williams v. State, 352 S.W.2d 230, 209 Tenn. 208 (1961); Hopson

-10-

v. State, 299 S.W.2d 11, 201 Tenn. 337 (1957); State v. Nunnery, 875 S.W.2d 681 (Tenn. Crim. App. 1993); State v. Vasser, 870 S.W.2d 543 (Tenn. Crim. App. 1993).

While there is ample evidence that the Defendant himself drove the vehicle and that he was intoxicated, the jury rendered a general verdict, not specifying upon which theory they relied to convict. As a result, the jury might have convicted the Defendant based on insufficient evidence of Sanchez' intoxication, and thus, we cannot conclude that instructing the jury on criminal responsibility was harmless error. Yet, the insufficiency of the evidence merely highlights the problem of instructing the jury on criminal responsibility without making it clear that the jury was to agree unanimously that either the Defendant or Sanchez was driving and that the driver was intoxicated. Even if the evidence was legally sufficient to support a conviction based on Sanchez' intoxication, it would be impossible to assure that the conviction was the result of a unanimous jury verdict.

A defendant has a fundamental constitutional right to a unanimous verdict before a conviction for a criminal offense may be imposed. State v. Shelton, 851 S.W.2d 134, 134 (Tenn. 1993); State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App.1991). The unanimity of a verdict is required so that the jury's verdict may not be a matter of choice between offenses in which some jurors convict of one offense and others of another offense, all within the same count. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996) Protection of this right often requires "special precautions [by the court] to ensure that the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on

-11-

different offenses in evidence." Shelton, 851 S.W.2d at 134. Where there is evidence of multiple offenses, the precaution is the doctrine of election, which requires the state to elect and identify at the end of its case-in-chief the exact offense for which it seeks conviction. Id.; Burlison v. State, 501 S.W.2d 801, 804 (Tenn.1973). Where there is technically one offense, but evidence of multiple acts which would constitute the offense, a defendant is still entitled to the protection of unanimity. State v. Forbes, 918 S.W.2d 431, 445-46 (Tenn. Crim. App. 1995)

> [I]n cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. The assessment of this potential would involve consideration of the allegations made and the statutory offense charged, as well as the actual evidence presented.

Brown, 823 S.W.2d at 583 (citing United States v. Gipson, 553 F.2d 453 (5th Cir.1977) and United States v. Beros, 833 F.2d 455 (3rd Cir.1987)).

In the case at bar, the trial court charged that "The facts presented in this case allow the jury to find either that (1) the defendant was the driver or (2) that the defendant was not the driver." Also, the jury was charged that they were required to reach a unanimous verdict. However, we do not believe that this instruction effectively communicated to the jury that they were to unanimously agree upon the facts constituting the offense, specifically, to unanimously agree whether the Defendant was or was not driving the Bronco. This leaves the possibility that part of the jury could have convicted the Defendant for driving himself, and the others could have concluded that he did not drive. The jury did

-12-

not indicate upon which theory and set of facts it convicted the Defendant. It is this potential for confusion that invades the Defendant's constitutional rights. Furthermore, this problem is compounded by the fact that the jury may have indeed compiled a "patchwork verdict" and convicted him without sufficient evidence of an offense. We hold that it was error for the trial court to charge criminal responsibility for the conduct of another without clearly communicating to the jury the need for a unanimous verdict on the facts.

Therefore, we must reverse the judgment of the trial court and remand for a new trial.


_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
GARY R. WADE, JUDGE


_____
CURWOOD WITT, JUDGE