IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2001

## STATE OF TENNESSEE v. STEPHANIE RENAE PERSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 00-139      Donald H. Allen, Judge**

_____

**No. W2000-02859-CCA-R3-CD - Filed October 10, 2001**

_____

A Madison County jury convicted the Defendant of misdemeanor theft of property, and the trial court sentenced her to eleven months and twenty-nine days of incarceration. The judgment of the trial court specified that the Defendant must serve seventy-five percent of the sentence prior to eligibility for work release, furlough, trusty status, and rehabilitative programs. The Defendant now appeals, challenging both the sufficiency of the evidence and the sentence that was imposed. Finding that the evidence was sufficient to support the conviction and that the sentence was properly imposed, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender; and Vanessa D. King, Assistant District Public Defender, Jackson, Tennessee (at trial and on appeal), for the Appellant, Stephanie Renae Person.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

I. FACTS

        The Defendant was indicted by the Madison County Grand Jury for misdemeanor theft of property, with the owner of the property being Fred's Dollar Store. At the jury trial, Tim McGee testified that he is the manager for Fred's Dollar Store in Jackson, Tennessee. Mr. McGee identified the Defendant as a person with whom he had come in contact in the store on September 3, 1999. On that date, the Defendant activated alarms when she exited the store with several items of

merchandise in her purse that had not been "deactivated." (When items are purchased, they are "deactivated" and then presumably do not set off the alarm). The items of merchandise in the Defendant's purse that had not been deactivated included Murine eye drops and four hair extensions, the total value of which was $10.88. Mr. McGee asked the Defendant if she had paid for the items, and she said she did not. The cashier reported to Mr. McGee that the items had not been presented to her when the Defendant checked out.

The Defendant's seven-year-old daughter testified that she was six years old at the time of the theft and that she had put the Murine eye drops and other items in her mother's purse without her mother's knowledge. The Defendant's eight-year-old son testified that he was with his mother shopping at Fred's on the day of the incident, along with his two sisters. He testified that he saw his "little sister" put the eye drops in his mother's purse without his mother seeing. He didn't tell his mother, although he did know that what his little sister had done was wrong. The Defendant's older daughter testified that she was also present on the day of the alleged theft, and she stated that she was there to buy a clipboard for school. She testified that the Person family had a "buggy" that contained her "mama's purse and some lotion and some Cocoa Butter and my clipboard." The older sister saw her younger sister putting the eye drops "and that stuff that goes on your hair" into the purse. She also did not tell her mother what she had seen.

The Defendant testified that she was shopping in Fred's with her three children. She first became aware that there was a problem when she was leaving the store and the alarm went off. The Defendant testified that she had placed the Murine eye drops in the buggy, but not in her purse. Concerning the Murine eye drops, the Defendant testified, "I didn't even think about it when I got up to the counter." She agreed that the hair extensions were in her purse when she was confronted by the manager. She testified that when the alarm went off and the manager called her back over to check her purse, her son "busted out with 'Brandi did it' and then that's when my daughter said 'Brandi did it.'" The Defendant further testified that even though she had to open her purse to get her money to pay for other items, she did not see the eye drops or hair extensions in her purse, because her money was "sitting right on top of it, so I just grabbed it out. I didn't even dig or anything in the purse."

In rebuttal, Tim McGee, the manager of Fred's Dollar Store, testified that after the incident, he took photographs of the items that had been found in the Defendant's purse. The photographs were admitted into evidence. Mr. McGee testified that the Murine eye drops for sale at Fred's were displayed on a shelf situated sixty-eight inches above the floor.

## II. ANALYSIS

### A. Sufficiency of Evidence

The Defendant first contends that insufficient evidence was presented to support her conviction. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence.  State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence.  Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999).  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  Liakas, 286 S.W.2d at 859.  This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence.  State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  Id.

In this case, the Defendant basically asserted that her youngest daughter had put the Murine eye drops and hair extensions into the Defendant's purse without the Defendant's knowledge.  This theory was supported by the testimony of the Defendant's three minor children and by the testimony of the Defendant.  However, there were several discrepancies in the testimony of the defense witnesses.  The State presented ample evidence, both direct and circumstantial, from which the jury could have reasonably inferred that the Defendant put the stolen items in her purse herself, knowingly failed to pay for the items, and attempted to leave the store.  The Defendant, who had twice been convicted of forgery, testified that although she obtained money from her purse to pay for her purchases, she did not see the Murine eye drops or the hair extensions in her purse.  As the State points out in its brief, it is obvious that the jury did not find the defense testimony persuasive.  We conclude, as did the trial court, that the evidence presented by the state was sufficient to convict the Defendant of misdemeanor theft.  This issue is without merit.

## B.  Sentencing

The Defendant next argues that her sentence is excessive.  As previously stated, the trial court imposed a sentence of eleven months and twenty-nine days to be served in the local jail.  The trial court ordered that the Defendant serve seventy-five percent of the sentence before being eligible for work release, furlough, trusty status, and rehabilitative programs.

Our analysis begins with well-settled principles that govern our review of a sentence determination imposed under the Criminal Sentencing Reform Act of 1989.  In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by

considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the trial court is required to allow the parties a reasonable opportunity to be heard on the question of the length of the sentence and the manner in which it is to be served. Tenn. Code Ann. § 40-35-302(a). In this case, the trial court did so. Further, the sentence imposed must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Id. § 40-35-302(b). A percentage of not greater than seventy-five percent of the sentence should be fixed for service, after which the defendant becomes eligible for "work release, furlough, trusty status and related rehabilitative programs." Id. § 40-35-302(d).

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in determining the percentage of the sentence to be served in actual confinement, the court must consider enhancement and mitigating factors as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the court should not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Id. § 40-35-401(d). The Tennessee Supreme Court has held that in misdemeanor sentencing a trial court is not required to place specific findings on the record. See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). A trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute. Id.

After a careful review, we conclude that the sentence imposed by the trial court is supported by the appropriate principles of sentencing. The Defendant has an extensive criminal history involving numerous convictions. See Tenn. Code Ann. § 40-35-114(1). The convictions include both felonies and misdemeanors. The record also indicates that the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See id. § 40-35-114(8). Thus, the record supports the application of two enhancement factors. As for mitigating factors, the trial court considered the needs of the Defendant's children and the Defendant's prospects for employment, but obviously felt that the enhancing factors far outweighed the mitigating factors.

A sentence of confinement is justified in this case for several reasons. First, confinement is necessary to protect society from this Defendant, who has a long history of criminal conduct. See id. § 40-35-103(1)(A). Next, the record indicates that measures less restrictive than confinement have frequently and recently been applied unsuccessfully to the Defendant. See id. § 40-35-103(1)(C).

We also note that with certain exceptions, a defendant is eligible for probation if the sentence actually imposed is eight years or less. Id. § 40-35-303(a). However, "[a]lthough probation 'must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law.'" State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997) (citing Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App.1996).

The defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, the Defendant has not met that burden. We conclude that the trial court committed no error in sentencing the Defendant. This issue is without merit.

Accordingly, the judgment of the trial court is in all respects AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE