# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 5, 2006

## STATE OF TENNESSEE v. SANDRA EVANS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-03656      Carolyn Wade Blackett, Judge**

---

### No. W2006-00167-CCA-R3-CD  - Filed September 13, 2007

---

The defendant, Sandra Evans, was convicted of first degree felony murder in the perpetration of theft and voluntary manslaughter (a Class C felony).  The conviction for voluntary manslaughter was merged with the felony murder conviction, and the defendant was sentenced to life imprisonment. On appeal, the defendant challenges the admissibility of hearsay testimony under the exceptions for excited utterances, and medical diagnosis and treatment.  The defendant also contends that certain testimony violated her right to confrontation and that the evidence, as a whole, was insufficient to support the convictions.  Upon review, we reverse the conviction and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; and Garland Ergüden and Robert Trent Hall, Assistant Public Defenders, for the appellant, Sandra Evans.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Willie Albert Guinn, the victim in this case, received severe burns to his head, upper body, and upper extremities at his home on November 16, 2002.  The victim drove himself to the Regional Medical Center in Memphis (Med) where he was treated.  The victim succumbed on December 8, 2002, due to complications resulting from the burns.  The defendant was indicted for premeditated first degree murder and first degree felony murder in the perpetration of theft.  A jury convicted the defendant of voluntary manslaughter and felony murder.

Wendell Guinn, the victim's son, visited with his father at the hospital emergency room on November 16, 2002. Wendell Guinn asked the victim how the burns had happened. The victim said the defendant had come to the victim's house and asked to stay there that night. The victim told her she could stay in the front of the house. Later, the defendant woke him and asked for money. The victim refused her and went back to sleep. The victim was awakened by something wet being poured on him. The defendant then took an aerosol can and lit a flame that set the victim on fire. The victim extinguished the flames by getting into the bathtub. The defendant then took the victim's wallet and jumped out the window. The victim drove himself to the hospital. Wendell Guinn said that his father seemed to be in pain but related the event in a calm and coherent manner.

Later on November 16, Wendell Guinn went to his father's home. In the victim's bedroom, he saw a lighter, an aerosol can, and an empty bottle of alcohol on the floor. A shirt with burn holes was in the bathtub. About a week later, Wendell Guinn cleaned the house and threw those items away. The victim's wallet was not found. Wendell Guinn stated that he knew the defendant and that his father and the defendant had a relationship over a period of approximately one year. The defendant had, at times, lived with the victim but was not living there at the time of this incident.

Dr. Laura Cooper was the general surgeon on duty when the victim presented himself at the emergency room. Dr. Cooper stated that the victim had second degree burns to more than fifteen to twenty percent of his body. The burns were primarily on the head, neck, face, chest, upper arms, and shoulders. She characterized second-degree burns as the most painful of burns and said the victim was under stress the entire time he was in the hospital. Dr. Cooper's only contact with the victim was from 3:00 a.m. until 7:00 p.m. on November 16. The victim told her that alcohol was thrown on him and lit with a flame.

Joy Adams, the victim's daughter, was notified of her father's hospitalization between 1:00 a.m. and 2:00 a.m. on November 16. She went to the hospital and talked to the victim after he had been moved to a room three or four hours later. Mrs. Adams was unsure of his demeanor as she said the victim would always display a "happy face" to her. She did believe the victim was in pain. The victim told her that he was asleep at home until he woke up to find the defendant smoking crack in the house. The defendant wanted money, and the victim told her to leave. The victim then lay down again. Afterwards, he felt something wet being poured on him and then a flame ignited him. The victim said he put out the flames in the bathtub and then drove to the hospital.

Chyral Crawford, a sister of the victim, heard the victim relate the events at approximately 9:30 a.m. on November 16. The victim said the defendant had wanted money from him, but he had refused. The defendant doused the victim by pouring alcohol from a bottle. While he was wiping his face, the defendant set him afire using an aerosol can and a lighter. The defendant then took the victim's wallet and left through a window. Mrs. Crawford stated that the victim had no problems speaking as he related these events and that he never changed his version of what had happened.

Evelyn Lincoln, another sister of the victim, visited him with Chyral Crawford on November 16. She stated that the victim told them that he was asleep when the victim came into his room and

asked for money. He replied that he had no money, and he again laid down. The victim said that he sat up when he felt something wet on his head and face; he then saw a ball of flame. The victim also said that he could not find his wallet when he prepared to leave. Ms. Lincoln went with other relatives to the victim's house and saw an aerosol can and an alcohol bottle in the floor of the victim's bedroom.

Officer Paul Neely, of the Memphis Police Department, interviewed the victim at 10:45 a.m. on November 16. He stated that the victim's speech was very labored. The victim told him that his girlfriend had thrown alcohol on him and set him on fire. Officer Neely submitted a report and had no further dealings with this case.

Dr. Michael Kelton was the victim's primary care physician while the victim was a patient at the Med. Dr. Kelton first spoke with the victim at approximately 6:00 a.m. on November 16. He said the victim understood what was happening. The victim told Dr. Kelton that a friend wanted to borrow money and that he refused. The friend threw flammable liquid on him, and a scuffle ensued until the friend sprayed him with a flammable liquid and set him afire using aerosol and a lighter.

In November 2002, Memphis Police Officer Bridgette King was assigned to the domestic violence unit. Officer King interviewed the victim a week or two after the incident. She described the victim as jovial but said that he talked with difficulty. The defendant was identified as a suspect, and Officer King filed a warrant for the defendant's arrest. The case was transferred to the homicide unit after the victim's death.

Dr. Jeffrey Lehman, an internal medicine physician, first saw the victim on November 18. The victim told him that his burns were the result of his girlfriend pouring alcohol on him and setting him afire.

Officer Joe Stark, of the Memphis Police Department, was the coordinator of this case after it was transferred to homicide. Officer Stark became involved on December 9, and he went to the victim's home on December 12. This was apparently the first visit to the crime scene by officers. During his thirty-minute investigation of the house, Officer Stark found one window with a broken lock.

Dr. Teresa Campbell, a forensic pathologist, performed an autopsy of the victim's body on December 9. She testified that the victim died due to complications caused by the burns he received.

The defendant testified in her own behalf. She stated that the victim had often abused her physically during their off and on two-year relationship. She said that, due to the victim's gambling losses, she had given him money and her food stamps. Despite this, the victim continued to beat her. On the night of this incident, she had told the victim she was leaving him. The victim locked the doors to the house and dragged her into his bedroom where he beat her with a belt and choked her. The defendant was attempting to leave through a window when the victim threw water on her. The defendant changed clothes, and the victim placed a belt on her neck and was choking her while

threatening to cut her into pieces. As the two struggled, the defendant grabbed an aerosol can and sprayed him. She then threw the contents a bottle of alcohol on the victim. She stated that the victim's shirt must have been on fire from his contact with a gas stove during their struggle, but that she was unaware of this when she doused him with alcohol. The defendant saw the flames that also rolled down her arms. She grabbed her purse and went out a window. She denied taking the victim's wallet.

Sufficiency

The defendant contends that the evidence was insufficient to convict her "of any grade of homicide greater than voluntary manslaughter." When sufficiency of the evidence adduced at trial is challenged on appeal, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). All questions involving the credibility of witnesses, the weight and value of the evidence, as well as the factual issues raised by the evidence are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A jury conviction removes the presumption of innocence and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating it is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The evidence presented to the jury, viewed in the light most favorable to the State, was sufficient to establish that the defendant was guilty of felony murder. Felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. 39-13-202(a)(2). The mental state required for conviction of felony murder is the intent to commit the underlying offense. T.C.A. § 39-13-202(b). In this case, the underlying felony was theft. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103.

In recalling how he received the eventually fatal burns, the victim told five relatives and three medical personnel that the defendant (or in some cases, girlfriend) had poured a flammable liquid on him and then ignited the blaze. The victim told his relatives that the defendant did this because he had refused her demands for money. The victim also told the relatives who testified that, after setting him afire, the defendant took his wallet and left by a window.

Within twenty-four hours of the victim's injuries, Wendell Guinn, Chyral Crawford, and Evelyn Lincoln visited the victim's home. All three witnesses testified they found an aerosol can and an alcohol bottle on the victim's bedroom floor. Wendell Guinn also found a lighter in the victim's bedroom. The victim's wallet was never found.

The defendant admitted spraying the victim with aerosol and pouring alcohol on him, although she claimed that it was in self-defense and that the fire was accidental. She further admitted that she left through a window without rendering assistance to the victim.

Based on the evidence presented at trial, a rational jury could find the elements of felony murder sufficient beyond a reasonable doubt.

## Hearsay Testimony

The defendant contends that certain hearsay testimony was erroneously admitted over objection on the basis of 1) medical diagnosis and treatment, 2) excited utterance, and 3) failure to consider the confrontation issue in testimonial statements by the victim.

## Medical Diagnosis and Treatment

Among the exceptions to the general ban on hearsay is that of a statement for purposes of medical diagnosis and treatment as contained in Tennessee Rule of Evidence 803(4).
> The following are not excluded by the hearsay rule:
> Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

The important limitation of this exception is that the statement must be "pertinent to diagnosis and treatment." Some statements that are intended by the declarant to be used for diagnosis and treatment are not always admissible. Their admissibility hinges on whether they are reasonably pertinent to diagnosis and treatment. State v. Williams, 920 S.W.2d 247, 256 (Tenn. Crim. App. 1995), citing Neil Cohen et al., Tennessee Law of Evidence § 809 [5] (p. 8-99) (4th ed. 2005).

Dr. Kelton testified concerning the victim's argument over money with a "friend." This was irrelevant to diagnosis and treatment and should have been redacted. Williams, 920 S.W.2d at 256.

Dr. Lehman testified that the victim informed him that the victim's girlfriend had poured alcohol on him and set him on fire. Upon this record, identification of the offender does not seem pertinent to the medical diagnosis and treatment. Furthermore, Dr. Lehman first saw the victim on November 18, well after the victim's burns were identified and appropriate treatment had begun. This testimony also should have been redacted.

By contrast, Dr. Cooper's testimony was more restrained as it omitted some of the extraneous information unnecessary for medical diagnosis and treatment. She stated that the victim had said he had alcohol thrown on him and ignited with a flame. The record before us does not reveal if medical treatment would be different for alcohol burns than for any other flammable liquid.

However, we are of an opinion that the method of application of the flammable liquid is irrelevant to the medical treatment. Redaction would have been proper in this case.

## Excited Utterance

Four of the victim's relatives were allowed to testify as to what the victim told them about the cause of his burns. The trial court allowed this testimony over objection under the hearsay exception for an excited utterance. Tenn. R. Evid. 803(2). The text of the rule is as follows:

> The following are not excluded by the hearsay rule:
>> A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

The rationales for this exception have been explained as follows:
> First, since this exception applies to statements where it is likely there was a lack of reflection – and potential for fabrication – by a declarant who spontaneously exclaims a statement in response to an exciting event, there is little likelihood, in theory at least, of insincerity. The Tennessee Court of Criminal Appeals eloquently summarized this view: "The underlying theory of this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." The lack of reflection is present because Rule 803(2) requires that the declarant must actually be under the stress of excitement while speaking. This hearsay exception is not available for a statement made when the declarant is no longer under stress. But a statement may qualify as an excited utterance even if the declarant has a motive to make a self-serving statement. Second, ordinarily the statement is made while the memory of the event is still fresh in the declarant's mind. This means that the out-of-court statement about an event may be more accurate than a much later in-court description of it.

Cohen et al., at § 807 [p. 8-73 - 8-74], citing State v. Land, 345 S.W.3d 516, 528 (Tenn. Crim. App. 2000).

It has been held that "[t]he ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication." State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993).

The time interval between the startling event is but one factor in determining whether a statement was under stress and excitement. Other relevant considerations include the nature and seriousness of the event; the appearance, behavior, and circumstances of the declarant, including such characteristics as age and physical and mental condition; and the content of the statement itself,

which may indicate the presence or absence of stress. State v. Stout, 46 S.W.3d 689, 700 (Tenn. 2001).

The victim related the events that resulted in his burns to Wendell Guinn after the victim had driven himself to the hospital and had received emergency treatment. Wendell Guinn said the victim spoke in a calm and coherent manner, although he seemed to be in pain.

Joy Adams heard the victim's version of the cause of the burns several hours after the event and after the victim was placed in a private room. In describing the victim's demeanor, Joy Adams said the victim always displayed a "happy face" to her.

Chyral Crawford and Evelyn Lincoln visited the victim after 9:00 a.m. on November 16. The victim had received treatment and had been placed in a room. Chyral Crawford stated that the victim had no problems speaking as he related the events. Evelyn Lincoln stated that the victim's appearance was upsetting to her but that he assured her "it's going to be all right."

Officer Paul Neely interviewed the victim at 10:45 a.m. on November 16. He stated that the victim's speech was very labored and that it was difficult for the victim to talk.

Officer Bridgette King, then a member of the domestic violence unit of the Memphis Police Department, interviewed the victim a week or two after he sustained his burns. She stated that, based on the victim's statements concerning the incident, she identified the defendant as the suspect and caused a warrant to be taken for her arrest.

In our view, none of the declarant's statements, as repeated in the above testimony, meet the criteria for excited utterances. None of the statements appear spontaneous but, rather, as calm recitations. The trial court adopted an arbitrary twenty-four-hour rule that would admit these statements uttered within twenty-four hours of the incident. This standard is unknown to our jurisprudence and ignores the rationales supporting the exception. At trial, the State placed great emphasis on the continuing stress of the victim due to the painfulness of his injuries. We have no doubt that the pain was severe and continued, in all probability, until death. However, the exception is based in part on the stress of the startling event itself and not on continuing pain.

For the foregoing reasons, we conclude that the subject testimony did not meet the requirements of the excited utterance exception and should have been excluded as inadmissible hearsay.

Confrontation Issue

The defendant also contends the victim's statements, as presented by the State's witnesses, violated the defendant's right to confront her witnesses.

The United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), reexamined the application of the Confrontation Clause of the United States Constitution and the admissibility of hearsay testimony. Our Supreme Court explained the analysis necessary when the prosecution attempts to introduce a declarant's out-of-court statement and the defendant raises a Confrontation Clause objection.

[T]he initial determination under Crawford is whether the statement is testimonial or nontestimonial. Crawford, 541 U.S. at 68, 124 S. Ct. 1354. If the statement is testimonial, then the trial court must determine whether the declarant is available or unavailable to testify. If the declarant is available, then there is no confrontation problem: "[t]he Clause does not bar admission of statement so long as the declarant is present at trial to defend or explain it." Id. at 59 n. 9, 124 S. Ct. 1354 (citing California v. Green, 399 U.S. 149, 162, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)). If the declarant is unavailable, the trial court must determine whether the accused had a prior opportunity to cross-examine the declarant about the substance of this statement. Id. at 68, 124 S. Ct. 1354. If the accused had such an opportunity, the statement may be admissible if it is not otherwise excludable hearsay. If the accused did not have this opportunity, then the statement must be excluded.

If the statement is nontestimonial, the Confrontation Clause analysis does not end. Instead, consistent with Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597, the court must determine whether the out-of-court statement bears adequate indicia of reliability – specifically, whether it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." See Crawford, 541 U.S. at 68, 124 S. Ct. 1354 (stating that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law – as does [Ohio v.] Roberts").

State v. Maclin, 183 S.W.3d 335, 351 (Tenn. 2006).

The victim's statements to the two officers were during an interrogation and would certainly qualify as testimonial in nature. In Crawford, it was held that the Confrontation Clause of the United States Constitution:

applies to "witnesses" against the accused – in other words, those who "bear testimony." . . . "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." . . . An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-

examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," . . . "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," . . . "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" . . .

Crawford, 541 U.S. at 51-52, 124 S. Ct. at 1364 (citations omitted).

The defendant had no prior opportunity to cross-examine the victim concerning his declarations made either to relatives or police officers. In addition, we have previously concluded that the statements did not qualify as a hearsay exception and, thus, were subject to exclusion.

However, the defendant herein did not interpose a confrontation objection at trial nor raise this issue in the motion for new trial. Thus, the issue as to confrontation was waived. See Tenn. R. App. P. 3(e); State v. Courtney Means, No. W2005-00682-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 242, at *15 (Tenn. Crim. App., at Jackson, Mar. 21, 2006) (holding that although the defendant had objected on the grounds of hearsay, he waived the issue of confrontation by not objecting on that basis). An issue may not be raised for the first time on appeal. Tenn. R. App. P. 36(a).

### Conclusion

After review, we conclude that the evidence, as presented at trial, was sufficient to support the defendant's conviction. However, we further conclude that much of the evidence was inadmissible hearsay and did not qualify as exceptions under medical diagnosis and treatment or as an excited utterance. The defendant waived the confrontation issue, but the evidence was otherwise inadmissible as hearsay. The error in admitting the inadmissible evidence requires a reversal of the defendant's conviction and remand for a new trial.

_____
JOHN EVERETT WILLIAMS, JUDGE