IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 19, 2007

## STATE OF TENNESSEE v. WILLIAM KEITH GILLUM

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-D-3312      Steve Dozier, Judge**

---

**No. M2006-02734-CCA-R3-CD - Filed February 7, 2008**

---

Defendant, William Keith Gillum, was charged in count one of the indictment with first degree premeditated murder, and in count two with aggravated assault. Defendant entered a best interest plea of guilty in count one to the lesser included offense of voluntary manslaughter, a Class C felony, and the State dismissed count two of the indictment. Following a sentencing hearing, the trial court sentenced Defendant to seven years. The trial court ordered Defendant to serve three months in the county workhouse, with Defendant placed on probation for the balance of his sentence. On appeal, Defendant challenges the length of his sentence, arguing that the trial court erred in the weight assigned to the one enhancement factor and the three mitigating factors. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Glenn R. Funk, Nashville, Tennessee, for the appellant, William Keith Gillum.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Pamela Sue Anderson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

The transcript of the guilty plea submission hearing is not included in the record. *See State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (observing that "a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed"). Nonetheless, we gleam from the record that the offense arose out of an altercation on August 30, 2005, between Defendant and the victim, Jeffery Kevin Rayner, over Defendant's then

fiancee, Natalie Chipps. The victim died as a result of a stab wound inflicted by Defendant as the two men struggled.

On September 25, 2006, Defendant entered a best interest plea of guilty to the lesser included offense of voluntary manslaughter, with the length and manner of service of his sentence to be left to the trial court's determination. As part of the plea agreement, Defendant waived the six-year sentencing range limit for a Range I, standard offender, convicted of a Class C felony, set forth in Tennessee Code Annotated section 40-35-112(a)(3). Defendant was thus subject to a term of imprisonment of between three and fifteen years. *See* T.C.A. § 40-35-111(b)(3).

## II. Sentencing Hearing

First Sergeant Thomas J. Lucas with the United States Army Reserve testified that he had been with the army reserve for twenty-seven years. Sergeant Lucas said that the victim was assigned to his unit in September 2004. The unit was deployed to Iraq in December 2004, and was on leave in the United States at the time of the victim's death in August 2005.

Sergeant Lucas described the victim as professional and ambitious. The unit was placed in numerous stressful situations while in Iraq, and Sergeant Lucas said that the victim conducted himself in a professional manner.

Martin Rayner, the victim's brother, testified that the victim felt that it was his duty to serve in Iraq "with no questions, no qualms." Mr. Rayner's daughter's class exchanged letters with the members of the victim's unit, and Mr. Rayner's son considered the victim as his hero. Mr. Rayner said that he and the victim spoke by telephone in July 2005, and discussed plans for the victim's leave in August. All of the family was excited about the victim's visit. Mr. Rayner described the devastating impact the victim's death had on the family, including the victim's ten-year-old son.

Dorothy Rayner, the victim's mother, testified that she met Ms. Chipps once in December 2004, before the victim was deployed to Iraq. Ms. Rayner said that she and the victim corresponded by e-mail while he was in Iraq, and the victim "would very lightly talk about" Ms. Chipps. Ms. Rayner said that on one occasion, Ms. Rayner took a check to Ms. Chipps for rent or some other expense at the victim's request. Ms. Rayner said the victim e-mailed her approximately three days later and asked for the check number and then cancelled payment of the check.

Ms. Rayner said the victim e-mailed her that he would be in Nashville on August 29, 2005. On that day, the victim called Ms. Rayner at approximately 2:15 p.m. to get the directions to the Rayners' new house. Ms. Rayner said that she did not hear from the victim again, and a detective with the Metro Nashville Police Department notified her of the victim's death on the following day.

Anita Rayner, the victim's sister, read a letter from William Keon Rayner, the victim's son. Keon wrote that he missed his father and wished he could spend time with him. Keon wanted to tell

his father that he got all A's on his midterm examinations and scored twelve goals during the soccer season. Ms. Rayner described the impact the victim's death had on her mother, Dorothy Rayner.

The defense then put on its proof. Lauren Walker, Defendant's mother, testified that Defendant met Ms. Chipps at the end of June 2005. Ms. Walker and Defendant discussed Defendant's possible relationship with Ms. Chipps even though Ms. Chipps was only approximately nineteen years old. Ms. Walker said that Defendant began dating Ms. Chipps on July 4, 2005. Defendant would stay with Ms. Chipps every Monday night while Ms. Walker watched Defendant's six-year-old daughter. Within a few weeks, Defendant and Ms. Chipps became engaged. Ms. Walker gave her approval to her son's marriage despite the age difference between Defendant and Ms. Chipps. Ms. Walker said that Defendant and Ms. Chipps officially announced their engagement on August 27, 2005.

Ms. Walker said that she received a telephone call from Defendant on August 30, 2005, from the hospital. Defendant told her about his altercation with the victim. Ms. Walker said that Defendant had a cut across his eyes and bruises on his neck. Ms. Walker said that Defendant returned to work in his electrical business after he was released on bond.

Ms. Walker said that Defendant was in a car accident in 1987 and sustained injuries to the front of his forehead. Defendant had surgery to reconstruct the bones in his face and was told that he would be unable to sustain a second facial injury. Ms. Walker acknowledged the depth of the Rayners' loss, but she said that Defendant was "a good person" who was needed by his daughter. On cross-examination, Ms. Walker acknowledged that Defendant was separated, but not divorced, from Christine Gillum at the time he became engaged to Ms. Chipps.

William Tracy Hargrove, Defendant's first cousin, testified that Defendant was a "hard worker" and had never seen him act violently towards another person.

James L. Curtis, a Nashville attorney, testified that he received a call from the Gillum family about Defendant's arrest. Mr. Curtis went to the police station to interview Defendant. Mr. Curtis said that Defendant had significant bruising around his neck. On cross-examination, Mr. Curtis acknowledged that at the time of the incident he was representing Defendant in his divorce and on a pending aggravated assault charge. On redirect examination, Mr. Curtis said that the State entered a nolo prosequi on the aggravated assault charge. The State clarified for the trial court that the prior aggravated assault charge was dismissed as part of Defendant's plea agreement as to the current charges.

Defendant testified in his own behalf. He extended an apology to the Rayner family and expressed his remorse over the victim's death.

On cross-examination, Defendant said that the knife which was used in the killing belonged to Ms. Chipps. Ms. Chipps kept the knife between the cushions of her couch for protection. Defendant said that during the altercation, the victim pushed him against the back of the couch with

a stick held to his throat. Defendant said that he kept trying to breathe and pulled out the knife. Defendant waited a moment, but the victim did not release his hold. Defendant said that he swung the knife in a wide arc, demonstrating that the knife traveled across the front of his body and over his shoulder. Defendant acknowledged that the knife made a ten-inch slash on the victim's chest. Defendant did not remember inflicting the fatal stab wound to the victim's chest. Defendant said that after the stabbing, he called the 911 operator and administered CPR to the victim until the emergency medical personnel arrived.

In response to the trial court's questions, Defendant acknowledged that he was still legally married when he became engaged to Ms. Chipps because Ms. Gillum would not come to Tennessee to sign the necessary papers to finalize the divorce. Defendant explained that Ms. Chipps told him that she had only met the victim two or three times, and that she did not know why the victim kept writing to her. Defendant acknowledged that from his perspective, there was no relationship between the victim and Ms. Chipps.

At the conclusion of the sentencing hearing, the trial court found Defendant's use of a deadly weapon during the commission of the offense as an enhancement factor and assigned the factor "great weight." *See* T.C.A. § 40-35-114(9). As mitigating factors, the trial court found that Defendant acted under strong provocation as evidenced by the testimony concerning his injuries immediately after the altercation, and the fact that Defendant had called the 911 operator and performed CPR until help arrived. *See id*. § 40-35-113(2), (13). The trial court also found that mitigating factor (11), Defendant committed the crime under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, would apply but factored this consideration in with factor (2). *See id*. § 40-35-113(11). The trial court noted that it also "placed great weight" on the two applicable mitigating factors.

The trial court found that Defendant was an appropriate candidate for alternative sentencing after a period of confinement. The trial court found that it could not:

> based on the proof before it, determine why the defendant and victim were arguing to the extent they were other than their mutual friendship with Ms. Chipps. The Court must impose a just sentence under the law after applying the pertinent sentencing factor. The Court places great weight on the use of a weapon. Without the use of a knife, there may not have been a homicide. The loss of a life was totally uncalled for under the circumstances. The Court is of the opinion that a split confinement sentence is necessary to avoid depreciating the seriousness of the offenses.

## III. Sentencing Issues

Defendant argues that his sentence of seven years is excessive because the trial court failed to properly weigh the one enhancement factor and the three mitigating factors. Defendant concedes that the trial court's application of enhancement factor (2) was proper, but he submits that the

applicable mitigating factors balance out the negative effect of the one enhancement factor so that a more appropriate sentence would be three years, or the minimum sentence for a Class C felony conviction. The State argues that under the 2005 amendments to the 1989 Sentencing Act, a defendant is precluded from appellate review of the weight assigned to any enhancement and mitigating factors deemed appropriate by the trial court in its sentencing determinations.

The Tennessee General Assembly recently amended the 1989 Sentencing Act, which became effective on June 7, 2005, and applies to defendants who commit a criminal offense on or after the effective date (the "Amended Act"). 2005 Tenn. Pub. Acts ch. 353, § 18. The determination of the length and manner of service of Defendant's sentence for the offense committed on August 30, 2005, is thus subject to the 1989 Sentencing Act as amended in 2005.

When a defendant challenges the length or the manner of service of his or her sentence, this Court must conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). This presumption, however, is contingent upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the record fails to show such consideration, the review of the sentence is purely *de novo. State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Amended Act requires the trial court to consider, but not be bound by, certain advisory guidelines to arrive at an appropriate sentence, which is then subject to appellate review. T.C.A. § 40-35-210(c). In making its sentencing determinations the trial court must consider: (1) the evidence presented at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any appropriate enhancement and mitigating factors; (6) and statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statements made by Defendant in his own behalf. T.C.A. § 40-35-210; *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). The defendant bears the burden of showing that his sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-401(b)(2006) provides that a defendant may challenge his or her sentence on appeal upon the following grounds:

(1) The sentence was not imposed in accordance with this chapter;

(2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-102 and 40-35-210; or

(3) The sentence is inconsistent with the purpose of sentencing set out in §§ 40-35-102 and 40-35-103.

Prior to 2005, Tennessee Code Annotated section 40-35-401(b) (2003) stated, "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; or (2) *The enhancement and mitigating factors were not weighed properly*, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." T.C.A. § 40-35-401(b) (2003) (emphasis added). The 2005 amendment thus deleted appellate review of the weight assigned by the trial court to any applicable enhancement and mitigating factors. *See State v. Terrence Patterson*, No. W2005-01638-CCA-R3-CD, 2007 WL 2700160, at *10 (Tenn. Crim. App., at Jackson, Sept. 17, 2007); *perm. to appeal filed* (Tenn. Nov. 16, 2007) (noting that "[t]he fact that the General Assembly deleted the language regarding the weighing of enhancement and mitigating factors demonstrates that the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors); *see also State v. Devin Banks*, No. W2005-02213-CCA-R3-CD, 2007 WL 1966039, at *48 (Tenn. Crim. App., at Jackson, July 6, 2007), *perm. to appeal filed* (Tenn. July 17, 2007).

Thus, a challenge to the weighing process engaged in by the trial court in its sentencing determinations will not afford relief to the defendant on appeal, unless the sentence is excessive under the sentencing considerations set forth in sections 40-35-102 and 40-35-210, or the sentence is inconsistent with the purpose of sentencing set out in sections 40-35-102 and 40-35-103. T.C.A. § 40-35-401(b). That is, the record must reflect that the trial court considered those enhancement and mitigating factors it deemed applicable, and the trial court, in determining the specific sentence, considered the nature and characteristics of the crime and the character and background of the defendant, and imposed a sentence which is not inconsistent with the principles and purposes of sentencing. *See* T.C.A. § 40-35-210(b), (d).

The record reveals that the trial court considered the enhancement and mitigating factors supported by the record, and placed significant weight on the use of a deadly weapon during the commission of the offense. Thus, the record reveals that the trial court considered the nature and characteristics of the criminal conduct involved, Defendant's history and background, the mitigating and enhancement factors advanced by the parties, and the principles of sentencing. *See* T.C.A. § 40-35-210(b), (d).

Defendant was convicted of a Class C felony with a sentencing range of between three and fifteen years. T.C.A. § 40-35-111(b)(3). Based on our review, a sentence of seven years is reasonable and justified considering the relevant principles of sentencing, as well as the circumstances of both Defendant and the offense. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-6-