# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2011

## STATE OF TENNESSEE v. MONTEZ DUNCAN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-05732      W. Mark Ward, Judge**

**No. W2010-02263-CCA-R3-CD  - Filed November 23, 2011**

The appellant, Montez Duncan, pled guilty in the Shelby County Criminal Court to attempted first degree murder, especially aggravated robbery, and especially aggravated kidnapping. The trial court sentenced the appellant to a total effective sentence of twenty-five years in the Tennessee Department of Correction. On appeal, the appellant challenges the length of the sentences imposed by the trial court. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Justin Gee (at trial) and Neil Umsted (on appeal), Memphis, Tennessee, for the appellant, Montez Duncan.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The Shelby County Grand Jury indicted the appellant and his co-defendants for attempted first degree murder, especially aggravated robbery, and especially aggravated kidnapping. Ultimately, the appellant pled guilty to the charged offenses. At the guilty plea hearing, the State recited the following factual basis for the pleas:

Your Honor, the facts of this case would [have] been [that] on or about January 21ˢᵗ of 2008, Mr. Brandon Noe [the victim] had just gotten off work and was heading towards his home. He was at a stop sign but prior to . . . arriving at that stop sign, he saw a blue small four door car behind him that was driving erratically[;] therefore, he paused longer at the stop sign than necessary to allow this vehicle to go on and pass him. Instead of passing him, it pulled up beside him, two individuals jumped out with guns. They pulled the guns on [the victim]. They forced [the victim] out of his car. They put a sweater over his head; they forced him into the back seat of his own HHR and held a gun to his head while the other gunman drove the vehicle.

The vehicle was then driven back to Memphis, Shelby County at the Jackson Pitt area where [the victim] was taken out of the vehicle. He was forced into a field at gunpoint and though he begged for his life and offered them every monetary thing that he owned . . . , the shooter instead pushed him off and shot him in the back[,] leaving him for dead in that field.

Fortunately[, the victim] did not die and was able to crawl on his belly across the field, across the street and elicited the help of a neighbor on the other side of the street. Police were notified of the teal colored HHR that belonged to [the victim] being taken in the carjacking. Officers observed this vehicle a short while later at a gas station.

When officers arrived on the scene, several . . . police cars, both marked and unmarked[,] arrived, at which time a Chevy Corsica which was associated by officers with this teal HHR, took off[. A] police chase ensued[,] and Mr. Antonio Turner and his girlfriend Valeria Jackson[] were apprehended.

In their possession [were] credit cards and identifications of [the victim]. These two individuals were taken back to the scene where a third individual, a Shinika (phonetically) Sawyer was located. She indicated that she was also with Mr. Turner and Ms. Jackson and that a fourth individual, an A.J. or an Anthony Hall, was also with them and that they had been driving the blue Honda Civic that was also parked there.

Mr. Turner gave a full statement in which he implicated [the appellant] as the shooter. [The appellant] was located approximately 24 to 48 hours after the shooting. He was riding in a car with his brother, an individual by the name of Julian Sanders, who indicated that Mr. Turner had called him from the jail and asked him to go tell [the appellant] that he was locked up on his charge.

[The appellant] gave a full statement[,] detailing not only everything that [the victim] had said about travelling [(sic)] with these three other individuals in the blue Honda to Southhaven and kidnapping and carjacking [the victim] and taking him out and shooting him in the field, but he also detailed his knowledge of what had happened to Mr. Turner and the two girls and Mr. Hall after they had left him when they took the Honda Civic and HHR with them.

The plea agreement provided that the trial court was to determine the length of the appellant's sentences. At the sentencing hearing, the twenty-one-year-old appellant testified that he had lived with his mother in California, Arizona, and Memphis. At the time of the offenses, the appellant was living by himself and working at Walmart in Memphis. The appellant said that he did not graduate from high school or obtain a general equivalency diploma (GED). The appellant acknowledged that he had previous convictions for unlawful possession of a weapon and for possession of marijuana.

The appellant said that his co-defendant Turner was a childhood friend and that he met his other co-defendants during his visits to Memphis. The appellant recalled that on the day of the offense, the co-defendants were with him at his apartment. They left the apartment and went to Christopher Taylor's house to pick up shoes. When they left there, Hall said that he needed money and asked the group if they wanted to rob someone.

The appellant said that after the subject was broached, "we just rolled with the punches." They went to Southhaven where they saw the victim in his vehicle. They followed him and eventually pulled up beside him. Hall and Taylor jumped out of the car, pointed guns at the victim, and told him to get into the backseat of his vehicle. The victim complied. Taylor got into the backseat with him, and Hall drove the victim's vehicle. Turner and the appellant, who was driving, followed in the Honda Civic. Both cars parked in front of an abandoned house. Hall told the appellant that the victim was "trying to . . . compromise" because he did not have anything to give the perpetrators.

The appellant said that Turner and the victim got out of the vehicle and that the victim had something like a sweater or a towel over his head. Turner gave the appellant the gun and told him to shoot the victim. The appellant said that the victim begged the appellant to not kill him. The appellant acknowledged that he shot the victim but maintained that he did not intend to kill him. Afterward, the appellant and his co-defendants left the scene and returned to the appellant's apartment. The appellant and Taylor went to sleep, and Hall and Turner left.

The appellant said that he regretted his actions and apologized to the victim and the victim's family. The appellant stated that his participation in the crimes was the result of "wrong decisions." He said that he was trying to redeem himself with a "Higher Power," to make "a fresh new start," and to become a more productive member of society.

The appellant said that at the time of the offenses he had a job, a home, and support from his family. He acknowledged that he knew Hall and Taylor carried guns and had committed robberies and carjackings. He also knew that the Honda Civic was stolen.

On cross-examination, the appellant admitted that he had "been rolling around with guns for a very long time." He also acknowledged that he had been in trouble as a juvenile for having a gun. He said that at the time he was arrested for the instant offenses, he had a pending case regarding his possession of a gun. Additionally, the appellant said that his brother was in the car with him when the appellant was arrested.

At that point in the sentencing hearing, the following colloquy occurred:

> [The State:] What was in the car when you got arrested?
>
> . . . .
>
> [The appellant:] It was a gun. It was a gun in the car and . . . some ziploc bags in the trunk.
>
> . . . .
>
> [The court:] Is it illegal to have ziploc bags?
>
> [The appellant:] They said that was the paraphernalia.
>
> [The court:] How old were you when you got arrested?

[The appellant:] I was 18.

[The court:] You were 18 and you had a gun?

[The appellant:] Yes, sir. I didn't – it was my – it was my brother's gun. It was up under the driver's seat of the car.

[The court:] Well, you carry a gun, don't you?

[The appellant:] Yes, sir. I had got locked up with my gun.

[The court:] But as an adult, do you carry a gun? At 18 you carry a gun?

[The appellant:] Yes, sir.

[The court:] How often do you carry a gun? . . . I'm talking as an adult. I don't care about carrying a gun as a juvenile. Tell me about your adult carrying a gun.

[The appellant:] I had that gun ever since I had came back to Memphis. . . .

[The court:] Do you have a permit to carry the gun?

[The appellant:] No, sir.

[The court:] You understand that's a violation of the law–

[The appellant:] Yes, sir.

[The court:] – to carry a gun? It's a misdemeanor.

[The appellant:] Yes, sir.

The appellant also acknowledged that he had smoked marijuana since he was eleven years old.

The appellant said that he pled guilty after the jury was seated for his trial. He said that he waited to enter a guilty plea because he hoped the State would make a plea offer, but

no offers were made.

Regarding the appellant's attempted first degree murder conviction, the trial court applied enhancement factor (1), that the appellant had a previous history of criminal behavior; enhancement factor (2), that the appellant was a leader in the offense; enhancement factor (5), that he treated the victim with exceptional cruelty; and enhancement factor (9), that the appellant employed a firearm during the offense. See Tenn. Code Ann. § 40-35-114(1), (2), (5), and (9). Regarding the convictions for especially aggravated robbery and especially aggravated kidnapping, the trial court found that the appellant had a previous history of criminal behavior, that he was a leader in the offenses, and that he treated the victim with exceptional cruelty. See Tenn. Code Ann. § 40-35-114(1), (2), and (5). In mitigation, the trial court found that the appellant expressed remorse. Tenn. Code Ann. § 40-35-113(13). The trial court imposed a sentence of twenty-five years for each of the appellant's three convictions and ordered that the sentences be served concurrently. On appeal, the appellant argues that the length of his sentences is excessive.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to

-6-

reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

The trial court applied enhancement factor (1) based upon the appellant's testimony that he had used marijuana since he was eleven years old and that as an adult he had carried a gun without a permit. See Tenn. Code Ann. § 40-35-114(1). On appeal, the appellant acknowledges that he testified about carrying a gun without a permit. However, he maintains that he made that acknowledgment as a result of the trial court's questioning, which he asserts "resulted in a break-down of the adversarial process in which the State bears the burden of establishing enhancement." The appellant contends that the only proof at the sentencing hearing resulted from the trial court's improper questioning regarding the appellant's actual or constructive possession of a gun. The State asserts that the trial court's questioning was proper.

Our law and the record before us belie the appellant's contentions. Tennessee Code Annotated section 40-35-209(b) provides that the rules of evidence apply to sentencing hearings. Rule 614(b) of the Tennessee Rules of Evidence provides that a trial court may question witnesses. This court has previously explained that "[s]o long as the inquiry is impartial, trial courts may ask questions to either clarify a point or to supply any omission." State v. Schiefelbein, 230 S.W.3d 88, 97 (Tenn. Crim. App. 2007). In the instant case, the trial court's questions were designed to clarify the appellant's testimony regarding his arrest

for possessing a gun. Therefore, we conclude that the trial court's questions were permissible. Regardless, the appellant also admitted that he had used marijuana since he was eleven years old. The appellant's admission of drug use was sufficient to justify the trial court's application of enhancement factor (1) to each of the appellant's convictions.

The trial court also applied enhancement factor (2), that the appellant was a leader in the offense. Tenn. Code Ann. § 40-35-114(2). The trial court stated, "I find that based upon he's the actual person that walked this man out in the field and shot him. That alone." The appellant contends that the application of enhancement factor (2) for the especially aggravated robbery and the especially aggravated kidnapping offenses was error. We disagree. Our case law establishes that the "enhancement for being a leader in the commission of an offense does not require that the [appellant] be the sole leader but only that he be 'a' leader." State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). This enhancement factor is applicable to all of the appellant's convictions.

The trial court also found that the appellant "treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense." Tenn. Code Ann. § 40-35-114(5). The trial court explained that the victim

> was kidnapped, blindfolded, had a gun held to his head for at least 20 minutes while they drove him to another location. He was walked out into a field at that location, shot in the back and left to die, the whole time while he's plea bargaining basically is the way he described it, plea bargaining for his life.

Enhancement factor (5) is generally applied to cases involving abuse or torture. State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995). Before a trial court may apply enhancement factor (5), the facts of the case must support a "finding of cruelty under the statute 'over and above' what is required to sustain a conviction for [the] offense." State v. Arnett, 49 S.W.3d 250, 258 (Tenn. 2001). We conclude that the trial court properly applied this enhancement factor to each of the appellant's convictions. See State v. Lonnie Lee Owens, No. M2005-00362-CCA-R3-CD, 2005 WL 2653973, at **5-6 (Tenn. Crim. App. at Nashville, Oct. 18, 2005).

The trial court applied enhancement factor (9) to the appellant's conviction for attempted first degree murder because the appellant used a gun during the commission of the offense. The trial court did not apply this factor to the appellant's convictions for especially aggravated robbery and especially aggravated kidnapping because the factor is inherent in the offenses. See Tenn. Code Ann. § 40-35-114 (providing that enhancement factor may not be applied if it is "already an essential element of the offense"). The appellant conceded that

he used a gun to commit the attempted first degree murder.  Ergo, the trial court did not err in applying this factor to that offense.

### III.  Conclusion

In sum, we conclude that the trial court did not err in its application of the statutory enhancement factors and the imposition of a twenty-five-year sentence for each offense. Therefore, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE